UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2023 NOV 17 PM 1: 22

| | |
|---|---|
| ROSE SALAIZ, | § |
| | § JUDGE KATHLEEN CARDONE |
| Plaintiff, | § |
| | § EP 23 CV 0423 |
| v. | § |
| | § |
| VSC OPERATIONS LLC, a Delaware Limited Liability Company d/b/a North American Auto Care | § |
| | § |
| Defendants. | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ROSE SALAIZ is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant VSC OPERATIONS LLC d/b/a North American Auto Care ("NAAC" "Defendant") is a limited liability company organized and existing under the laws of Delaware with its principal address at 5900 S. Lake Forest Dr, Suite 300, McKinney, TX 75070 and can be served via its registered agent Benjamin David Howard at 5900 S. Lake Forest Dr, Suite 300, McKinney, TX 75070.

### NATURE OF ACTION

3. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For

1

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4.   Plaintiff Rose Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's agents placed unauthorized phone calls to her personal cell phone for telemarketing purposes in violation of the TCPA.

5.   Defendant offers vehicle service contracts ("VSC") to consumers. As part of marketing their services, Defendant authorizes their agents and/or sellers to place unauthorized phone calls to thousands of consumers personal cell phones including Plaintiff's.

6.   Plaintiff never consented to receive any of the alleged phone calls, which were placed to her for telemarketing purposes.

## JURISDICTION AND VENUE:

7.   The Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.   The Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9.   The Court has personal jurisdiction over Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conduct business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

4

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller ...may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23. Plaintiff successfully registered her personal cell phone ending in -0895 on the National Do-Not-Call Registry since May 31, 2021, which was more than 31 days prior to receiving the alleged calls.

24. Plaintiff never asked the National Do-Not-Call Registry administrator to remove her from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25. Plaintiffs phone ending in -0895 is a residential number.

26. Defendant NAAC is the administrator of vehicle service contracts.

27. Defendant NAAC contracts with independent sellers to market and sell Defendant's VSC's.

28. Defendant NAAC instructs their sellers to target consumers that own vehicles that are either past the vehicles factory warranty or about to expire.

29. Defendant NAAC provides their sellers with a calling list on which consumers to call and solicit Defendant's VSC's.

30. Defendant NAAC's sellers make unauthorized calls to thousands of consumers soliciting Defendant NAAC's VSC's.

31. Defendant NAAC has been sued multiple times for violating the TCPA, however ratifies and authorizes their sellers to continue making illegal telemarketing calls soliciting NAAC's VSC's.

32. Defendant NAAC makes substantial profit gains by engaging in illegal telemarketing.

33. On three separate occasions Plaintiff was contacted to her phone ending in -0895 by one of Defendant's sellers named Gold Standard Protection ("GSP").

34. GSP solicited Plaintiff for a VSC from NAAC on each of these occasions.

35. GSP spoofed their Caller ID on each alleged call they made to Plaintiff including using Plaintiff's area code (915) on two of the calls to trick Plaintiff into thinking the calls were local.

36. **First Call** – On June 14, 2023, at 10:40 AM, Plaintiff received a call to her phone -0895 from GSP from phone number (877) 964-5179.

37. Plaintiff answered and was greeted by a male representative soliciting VSC's.

38. Plaintiff was not interested and disconnected the call.

39. **Second Call** – On July 16, 2023, at 5:25 PM, Plaintiff received a call to her phone -0895 from GSP from phone number (915) 321-3635.

40. Plaintiff answered and was greeted by a male representative soliciting VSC's.

41. Plaintiff was not interested and again disconnected the call.

42. **Third Call** – On July 19, 2023, at 12:01 PM, Plaintiff received a call to her phone -0895 from GSP from phone number (915) 321-3635.

43.     Plaintiff answered and was greeted by a male representative soliciting VSC's.

44.     Plaintiff became frustrated and annoyed for continuing to receive unauthorized solicitation calls to her phone -0895 and feigned interest in a VSC in order to ascertain who was responsible for the alleged calls.

45.     The male representative asked Plaintiff qualifying questions regarding her vehicle's make, model, mileage, and solicited Plaintiff for a VSC on behalf of Defendant NAAC.

46.     The male representative advised Plaintiff that he was going to transfer her to his senior specialist that would go over the details of the VSC.

47.     Plaintiff was transferred to another representative from GSP named Raul.

48.     Raul confirmed Plaintiff's vehicle information and solicited Plaintiff for a VSC on behalf of Defendant NAAC.

49.     Raul advised Plaintiff the VSC would be a down payment of $195 and $183.61 per month.

50.     Raul advised Plaintiff that GSP works for Defendant NAAC and that NAAC is the administrator of the VSC.

51.     Plaintiff received a VSC in the mail (VSC# DTCEX30193) which lists GSP as the seller and Defendant NAAC as the administrator.

52.     The alleged calls were not made to Plaintiff for emergency purposes.

53.     Plaintiff has never had any relationship with Defendant NAAC or GSP, and never knew who Defendant NAAC or GSP was prior to the calls being made to her personal cell phone.

54.     Plaintiff became frustrated, irritated, and annoyed by the calls.

55.     Defendant NAAC employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

56. Defendant NAAC amassed lists of thousands of potential customers from public records, and data aggregators and provided and instructed their agent and/or seller to make unauthorized solicitation calls to these customers.

57. Defendant has knowledge of and has adopted and maintained TCPA violations as a sales strategy.

58. Defendant NAAC knew full well that their agents and/or sellers are calling and harassing consumers in an attempt to procure business on behalf of NAAC.

59. Defendant NAAC refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit NAAC financially.

60. Upon information and belief, Defendant NAAC did not train their agents and/or sellers who engaged in telemarketing for NAAC on the existence and use of any internal do not call policy as they failed to recognize Plaintiff's personal cell phone 0895 is registered on the National Do-Not-Call Registry.

61. Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of her phone because the phone line was tied up during the telemarketing calls and her privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using her telephone for lawful purposes.

62. Neither GSP or Defendant NAAC are registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations that Plaintiff received from GSP calling on behalf of NAAC. https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain GSP's or NAAC's registration.

63.     Neither GSP or Defendant NAAC qualifies for an exemption under § 302.053.

64.     The Texas Registration Database shows Defendant NAAC was registered at one point in time but is now suspended file number 20220002.

65.     The alleged calls Plaintiff received were sent for the purpose of encouraging the purchase or rental of, or investment, property, goods, or services as they seek to have her purchase a VSC from Defendant NAAC.

## **VICARIOUS LIABILITY OF DEFENDANT NAAC FOR THE CONSUCT OF GSP**

66.     Defendant NAAC is vicariously liable for the telemarketing calls that generated the lead on their behalf.

67.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

68.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

69.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

70.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave

> consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

71. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

72. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

73. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

74. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

75. Defendant NAAC is legally responsible for ensuring that GSP that make telemarketing calls on behalf of Defendant NAAC comply with the TCPA when so doing.

76. Defendant NAAC knowingly and actively directed the phone calls in this Complaint be made.

77. Defendant NAAC instructed GSP on what states to call, what hours to call, and what to say when the phone calls were answered.

78. Defendant NAAC directed GSP on the qualifications required for each customer and supplied GSP with the hardware and software used to enter those qualifications.

79. Defendant NAAC knew (or reasonably should have known) that GSP was violating the TCPA on their behalf but failed to take effective steps within their power to force GSP to cease that conduct.

80. Furthermore, NAAC had day-to-day control over the actions of GSP, including the ability to require them to respect the National Do Not Call Registry.

81. Defendant NAAC also gave interim instructions to GSP by providing lead-qualifying instructions and lead volume limits.

82. Defendants NAAC donned GSP with apparent authority to make the calls at issue. Thus, GSP pitched NAAC'S VSC'S in the abstract.

83. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

84. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

85. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an

agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

86. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

87. Defendant NAAC is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when GSP solicited Plaintiff for a VSC on behalf of Defendant NAAC.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

88. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

89. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

90. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

91. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

92. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

93. Plaintiff has been denied the use of her phone, enjoyment of her phone, and had the functionality of her phone decreased because of unnecessary charging, erosion of phone memory, and had her privacy invaded by the harassing robocalls.

94. The alleged calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

95. Plaintiff has been annoyed, harassed, and irritated by the alleged calls placed on behalf of NAAC.

96. The alleged calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

97. The calls were to the Plaintiff's cellular phone -0895, which is the Plaintiff's personal cell phone that she uses for personal, family, and household use. The Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years and primarily relies on her cellular phone to communicate with friends and family. The Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts.

## CAUSES OF ACTION:

### COUNT ONE:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

98. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99. Defendant's agents and/or sellers called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

100. Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

101. Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

102. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

### COUNT TWO
### (Violations of The Texas Business and Commerce Code 305.053)

103. Plaintiff incorporates the foregoing allegations as if set forth herein.

104. The foregoing acts and omissions of Defendant's agents and/or sellers constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without her prior express written consent in violation of 47 U.S.C. § 227 et seq.

105.    Plaintiff seeks for herself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

106.    Plaintiff seeks for herself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## COUNT THREE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

107.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

107.    Defendant's agents and/or sellers made at least three (3) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

108.    As a result of Defendant's agents and/or sellers' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

109.    As a result of Defendant's agents and/or sellers' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rose Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

    B.    A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

    C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

    D.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for three calls.

    E.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

    F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

    G.    An award to Ms. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

    H.    An award to Ms. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity;

    I.    Such further relief as the Court deems necessary, just, and proper.

November 17, 2023,                        Respectfully submitted,

*Rose Salaiz*

Rose Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0895
21.msalaiz@gmail.com